STEPHENS  )
    v.    )    APPEAL.
MAY     )

18

19

HAYES, for the appellant,

WHITESIDE, contra,

21

OVERTON, J. delivered the opinion of the court:

The whole evidence in the cause is detailed in the records, from which it appeared that the appellant had nearly finished the house according to his contract with the appellee; there was only a few days work to do when the house caught fire, and was destroyed. From Stephen's own acknowledgement May had advanced him $300 before the accident took place. May and his family, at the time were living in one room of the house, by the permission of Stephens of course; and the evidence shows that Stephens, who was at work in one room of the house, had a fire made in the hearth to boil glue, and had, at the same time, a boy belonging to May, employed in his service in grinding paint, in the same room. The fire had been made early in the day, and Stephens, at dinner time, was about, with his hands, to leave the room and go to dinner; he told the boy to clean the stone on which he had been grinding paint, lest some of the oil might drop on the floor, and throw the shavings with which he did it, into the fire place. This was done and in a little time after they left the room, the house was perceived to be on fire.

The counsel for Stephens moved the court to instruct the jury, that if they believed the money was voluntarily paid by May to Stephens, on account of the work done on the house, it could not be recovered back; and further, that if the work had been destroyed before it was completed, the appellee having a remedy on the covenant, could not sue to recover back the money paid on account of the work done in pursuance of that covenant. But the court charged the jury, if they believed the money was paid under the expectation that the house would be completed, and it was not finished, it was such

22

a mistake as would authorize it to be recovered back; and that under these circumstances, May could recover in this form of action, notwithstanding the covenant. The jury were also charged that a bare acknowledgement of the reception of money was not sufficient to prevent the statute of limitations from operating as a bar; but that such acknowledgement, with other proof from which a liability to pay might be inferred, would be sufficient.

There was a verdict in favor of the appellee, and a motion for a new trial, which was overruled.

To all these opinions the appellant excepted, and removed the cause of this court by an appeal. The grounds taken are;

1. That covenant and not case was the proper form of action.

2. The payment of the $300 was voluntary, and therefore cannot be recovered back.

3. The statute of limitations ought to have barred the action.

4. The judge ought to have granted a new trial, upon the ground that he misdirected the jury, and that the verdict was contrary to evidence.

(1) The authorities show clearly that notwithstanding the deed, an action on the case, for money had and received, for the money advanced, could be supported where there was a failure to finish the work according to contract, 2 Com. Con. 563, 3 Johns 509, 1 Caines 48, 1 Wash. 280. In this case Stephens did not finish it, it is not pretended, for it was burned down.

The authorities produced in support of the second proposition, do not support it. The case reported in 2 Esp. Rep. 723, may be taken as an instance of a volun-

tary payment; there was no time limited for the completion of the new invented patent machines. The declaration averred that owing to the inattention of the defendant, the plaintiff had lost the opportunity of selling them under the impression that it was a voluntary payment, the court would not permit a recovery back of the money advanced. The contract was still open, and for aught that appears the defendant was willing to proceed with the work. In this case the contract was at an end; the contract failed, and the plaintiff had a right to a return of his money, not on the ground of mistake as stated by the judge, but the failure of the consideration; unless the court could be convinced that the appellant was in no fault as to the house getting on fire. There was evidence before the jury on this point, and it does not clearly appear that the jury erred in this respect. *(2)* If the jury had been convinced that the appellant had been in no way to blame, they certainly would not have found a verdict against him. This was the gist of the whole complaint. For, supposing the house to have got on fire from some of the neighboring house, or by some of May's family carrying the fire there, Stephens ought to be paid for his work. 1 Taunt Rep. 137. The court ought to be clearly convinced that the jury erred in their opinion of this part of the evidence, before it would reverse. This is far from being the case. The authorities referred to by the appellants counsel, 3 Esp. Rep. 467, 2 Com. Con. 40, 120, 3 Burr, 1592, do not vary the view already taken of this part of the subject.

*(3)* It is strenuously urged that the statute of limitations ought to prevail in this case. Those who have had experience of mankind, cannot doubt that statutes of limitations are among the wisest and best that belong to any country, and ought to be encouraged and liberally

expounded for the suppression of unjust stale demands. Therefore it is, that we are not willing to go all the lengths of the English courts in saying that the slightest objection imaginable, will be sufficient to take cases out of the statute. *(4)* It should satisfactorily appear that there was an existing debt on demand, at the time of the acknowledgement, in order to ascertain this, all the circumstances attending to the case was proper to be considered. *(5)* These circumstances should be clearly convincing that the debt was still existing; if doubtful the jury ought to lean in favor of the statute, being a public regulation made for the quiet and peace of society. *(6)* Nor is it believed to be true, as is insinuated by the appellee's counsel, that courts will never grant a new trial to let in the statute of limitations. The principle upon which the court acts, is, as to new trials, that it never will reverse, unless clearly convinced the jury found a verdict without sufficient evidence.

*(7)* But the judge who tries the cause may allow of a new trial when his mind shall be convinced that the verdict is against the weight of evidence. *(8)* It is impossible for this court to place itself precisely in the situation of the judge presiding at the trial. Much depends, or may depend, on occular (auricular) remark, which cannot at all times be put on paper.

It does not appear that the court erred in this respect, considering all the circumstances disclosed by the record.

The only remaining consideration is, whether the judge erred in refusing a new trial. This point was necessarily anticipated in the observations already made. Whether the appellant was in fault in the house being burned, was a fact for the consideration of the jury, and the court cannot say that the jury was wrong.

The judgment must be affirmed.